# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

SCOTT JOHNSON, on behalf of himself and all
others similarly situated,

        Plaintiff,

      v.

PLATINUM CORRAL LLC and PLATINUM
CORRAL MANAGEMENT, LLC,

        Defendants.

17 Civ. 399 (GCS) (EPD)

Hon. George C. Smith

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SCOTT JOHNSON'S UNOPPOSED MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 1

    I.     Factual Allegations .................................................................... 1

    II.    Overview of Litigation ............................................................... 1

    III.   Settlement Negotiations ............................................................. 2

SUMMARY OF SETTLEMENT TERMS ...................................................................... 3

    I.     The Settlement Fund ................................................................. 3

    II.    Eligible Employees ................................................................... 3

    III.   Settlement Notice Procedure ..................................................... 3

    IV.   Release .................................................................................... 4

    V.    Allocation Formula ................................................................... 4

    VI.   Service Awards ......................................................................... 5

    VII.  Settlement Administration ......................................................... 5

    VIII. Attorneys' Fees and Litigation Costs ......................................... 6

ARGUMENT ..................................................................................................................... 6

    I.     A One-Step Approval Process Is Standard for FLSA Settlements. ....................... 6

    II.    The Settlement Is Fair and Reasonable and Should Be Approved. ...................... 7

    III.   The Settlement Notice Adequately Informs Collective Members
          of the Terms of the Settlement .............................................. 10

    IV.   The Service Awards Should Be Approved as Fair and Reasonable. ................... 11

    V.    Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable. ........... 12

          A.    The Percentage Method Is Appropriate for Awarding Attorneys'
                Fees in Common Fund Settlements in Wage and Hour Cases. ............... 12

B.      The Sixth Circuit's Award Factors Support Approval of Plaintiff's Counsel's Fees ........................................................................................ 15

         1.      The Settlement Bestows Significant Benefit to the Participating Settlement Collective Members ................................................... 15

         2.      Plaintiff's Counsel Expended Substantial Time and Labor ......... 15

         3.      Plaintiff's Counsel Undertook the Litigation on a Contingent Basis ....................................................................... 17

         4.      Public Interest Favors Approval of Attorneys' Fees ................... 18

         5.      This Wage and Hour Collective Action is Complex ................... 19

         6.      The Quality of Representation and Professional Skill of Plaintiff's and Defendants' Counsel Support Approval of the Requested Fees ............................................................................. 19

C.      Plaintiff's Counsel Are Entitled to Reimbursement of Reasonable Expenses Under the Agreement ............................................................... 20

CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*A.H. Phillips, Inc. v. Walling*,
   324 U.S. 490 (1945).................................................................................................18

*Alli v. Boston Market Corp.*,
   No. 10 Civ. 4 (D. Conn. Dec. 9, 2011), ECF No. 183 (Apr. 17, 2012) ...................8

*In re Am. Family Mut. Ins. Co. Overtime Pay Lit.*,
   No. 06 Civ. 17430, 2010 WL 9593857 (D. Colo. Dec. 14, 2010)............................8

*Azogue v. 16 for 8 Hosp. LLC*,
   No. 13 Civ. 7899, 2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016) ............................5

*Bailey v. AK Steel Corp.*,
   No. 06 Civ. 468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008)..............................12

*Basile v. Merrill Lynch, Pierce, Fenner & Smith*,
   640 F. Supp. 697 (S.D. Ohio 1986) ......................................................................12

*Bassett v. Tennessee Valley Auth.*,
   No. 09 Civ. 39, 2010 WL 3092251 (W.D. Ky. Aug. 5, 2010)...............................10

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................7, 19

*Bessey v. Packerland Plainwell, Inc.*,
   No. 06 Civ. 95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) ...........................13

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)............................................................................12, 13, 14, 15

*Bowling v. Pfizer, Inc.*,
   102 F.3d 777 (6th Cir. 1996) ...........................................................................14, 15

*Bozak v. Fedex Ground Package Sys., Inc.*,
   No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014)................................6

*Bradford v. Legacy Health Servs.*,
   No. 13 Civ. 218, 2014 WL 7185453 (N.D. Ohio Dec. 16, 2014).............................6

*Bravo v. 57th Rest. Assocs. LLC*,
   No. 14 Civ. 8492, 2015 WL 1283659 (S.D.N.Y. Apr. 9, 2015)...............................6

*Castillo v. Noodles & Co.*,
   No. 16 Civ. 3036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016) ..............................8

iv

*Chesher v. Neyer*,
  No. 01 Civ. 0566, 2007 L 4553908 (S.D. Ohio Dec. 19, 2007) ............................................13

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)....................................................................................16

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 08 Civ. 01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010)........................................19

*Crawford v. Lexington-Fayette Urban Cty. Gov't*,
  No. 06 Civ. 299, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008)...............................................7

*Creely v. HCR ManorCare, Inc.*,
  920 F. Supp. 2d 846 (N.D. Ohio 2013)....................................................................................8

*Deposit Guar. Nat'l Bank v. Roper, Jackson, Miss.*,
  445 U.S. 326 (1980).............................................................................................................19

*Dillworth v. Case Farms Processing, Inc.*,
  No. 05 Civ. 1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010)...........................7, 12, 13, 18

*In re Dun & Bradstreet Credit Serv. Customer Litig.*,
  130 F.R.D. 366 (S.D. Ohio 1990) .........................................................................................11

*Edwards v. City of Mansfield*,
  No. 15 Civ. 959, 2016 WL 2853619 (N.D. Ohio May 16, 2016)............................................6

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
  137 F.R.D. 240 (S.D. Ohio 1991).........................................................................................11

*Feiertag v. DDP Holding, LLC*,
  No. 14 Civ. 2643, 2016 WL 4721208 (S.D. Ohio Sept. 9, 2016)....................................13, 19

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
  104 F. Supp. 3d 290 (E.D.N.Y. 2015) ..................................................................................10

*Foster v. Nationwide Mut. Ins. Co.*,
  710 F.3d 640 (6th Cir. 2013) .................................................................................................9

*Gascho v. Glob. Fitness Holdings, LLC*,
  822 F.3d 269 (6th Cir. 2016) ..................................................................................12, 13, 15

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013)..................................................................................................................6

*Gentrup v. Renovo Servs., LLC*,
  No. 07 Civ. 430, 2011 WL 2532922 (S.D. Ohio June 24, 2011)............................................18

v

*Gokare v. Fed. Express Corp.*,
    No. 11 Civ. 2131, 2013 WL 12094887 (W.D. Tenn. Nov. 22, 2013) ....................................15

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) ....................................................................................................11

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ......................................................................................7

*Heibel v. U.S. Bank Nat'l Ass'n*,
    No. 11 Civ. 00593, 2014 WL 12591848 (S.D. Ohio May 21, 2014)..........................................12

*Henry v. Quicken Loans, Inc.*,
    698 F.3d 897 (6th Cir. 2012) ....................................................................................................9

*Hoffmann–La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)..................................................................................................................10

*Johnson v. Midwest Logistics Sys., Ltd.*,
    No. 11 Civ. 1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013)...........................................14

*Kritzer v. Safelite Solutions, LLC*,
    No. 10 Civ. 0729, 2012 WL 1945144 (S.D. Ohio, May 30, 2012)....................................7, 11

*Lonardo v. Travelers Indem. Co.*,
    706 F. Supp. 2d 766 (N.D. Ohio 2010).....................................................................................11

*Lynn's Food Stores, Inc. v. United States*,
    679 F.2d 1350 (11th Cir. 1982) .................................................................................................7

*Northcross v. Bd. of Educ. of Memphis City Schs.*,
    611 F.2d 624 (6th Cir. 1979) ....................................................................................................20

*Prena v. BMO Fin. Corp.*,
    No. 15 Civ. 9175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .................................................6

*Pritchard v. Dent Wizard Int'l Corp.*,
    210 F.R.D. 591 (S.D. Ohio 2002) ..............................................................................................6

*Rawlings v. Prudential–Bache Properties, Inc.*,
    9 F.3d 513 (6th Cir.1993) ...........................................................................................12, 13, 14,

*Renfro v. Ind. Mich. Power Co.*,
    No. 99 Civ. 877, 2007 WL 710138 (W.D. Mich. Mar. 6, 2007...............................................20

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
    No. 09 Civ. 1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010).......................10, 11, 13, 18

*Schneider v. Goodyear Tire & Rubber Co.*,
No. 13 Civ. 2741, 2014 WL 2579637 (N.D. Ohio June 9, 2014)........................................6, 7

*Smillie v. Park Chemical Co.*,
710 F.2d 271 (6th Cir. 1983) ................................................................................12

*Swigart v. Fifth Third Bank*,
No. 11 Civ. 88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ........................................7, 13

*In re Thirteen Appeals*,
56 F.3d 295 (1st Cir. 1995)................................................................................12, 13, 14,

*Thomas v. Speedway SuperAmerica, LLC*,
No. 04 Civ. 00147, 2006 WL 4969500 (S.D. Ohio Mar. 31, 2006) ........................................8

*Thomas v. Speedway SuperAmerica, LLC*,
506 F.3d 496, 504-09 (6th Cir. 2007). ................................................................. 8, 9

*Thornton v. East Texas Motor Freight*,
497 F.2d 416 (6th Cir. 1974) ................................................................................11

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................................................14

*Waggoner v. U.S. Bancorp*,
No. 14 Civ. 1626, 2016 WL 7474408 (N.D. Ohio Dec. 29, 2016)........................................12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)................................................................................14

*In re Whirlpool*,
No. 08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ..........................17, 18, 19

*Whitlock v. FSL Mgmt., LLC*,
No. 10 Civ. 00562, 2015 WL 9413142 (W.D. Ky. Dec. 22, 2015)........................................18

*Woods v. New York Life Ins. Co.*,
686 F.2d 578 (7th Cir. 1982) ................................................................................7

STATUTES

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ............................................................ *passim*

## INTRODUCTION

Plaintiff Scott Johnson and Defendants Platinum Corral, LLC and Platinum Corral Management, LLC ("Platinum Corral") have agreed, subject to Court approval, to resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief.  The settlement should be approved because it resolves a bona-fide dispute, was the result of arm's-length settlement negotiations between experienced counsel assisted by a private mediator, and provides good value to the workers it will benefit.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Allegations

Platinum Corral operates 26 franchise locations of the Golden Corral Buffet-Grill restaurant chain.  ECF No. 23 (First Am. Compl. ("FAC")) ¶ 3.  Plaintiff worked as an exempt-classified Associate Manager ("AM")[1] from approximately July 2012 to January 2015.  *Id.* ¶ 10. Plaintiff alleges that Platinum Corral violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, by improperly classifying him and other AMs as exempt from federal overtime requirements and failing to pay them overtime wages.  *Id.* ¶¶ 1, 5, 39, 50.

### II.     Overview of Litigation

Plaintiff Scott Johnson commenced this action by filing a Collective Action Complaint on May 9, 2017, and shortly thereafter substituted Platinum Corral LLC as a proper defendant in the First Amended Complaint.  ECF Nos. 1, 23.  Platinum Corral asserted as an affirmative defense that it properly classified AMs as exempt "executives" or "administrators."  ECF No. 28 (Answer).  Robert Cooper joined the case as an opt-in plaintiff on July 7, 2017.  ECF No. 24.

---

[1]     The term "AM" includes Associate Managers, Assistant Managers, Service Managers, and Kitchen Managers.

The Court held a preliminary pretrial conference on July 20, 2017, and entered a Preliminary Pretrial Order on July 28, 2017.  ECF No. 33.  The parties exchanged initial disclosures and negotiated an ESI protocol.  Declaration of Melissa L. Stewart in Support of Plaintiff's Motion for Approval of Collective Action Settlement ("Stewart Decl.") ¶ 13.  Plaintiff also served initial written discovery requests.  *Id.*  Plaintiff filed a motion seeking the Court's authorization to send notice of this action to AMs on October 17, 2017.  ECF No. 35.

Shortly after Plaintiff moved for collective action notice, the parties agreed to attempt to resolve the case through private mediation and, on November 3, 2017, submitted a joint motion to toll the claims of potential collective members and stay proceedings pending the outcome of mediation.  ECF No. 38.  The Court granted the parties' stay request.  *See* ECF No. 39.

## III.    Settlement Negotiations

The parties engaged John Harkavy, an experienced mediator in employment and wage and hour law, to mediate this matter on January 30, 2018 in Raleigh, North Carolina.  Stewart Decl. ¶ 15.  In preparation for mediation, Platinum Corral produced personnel data to allow Plaintiff to calculate damages.  *Id*. ¶ 16.  Plaintiff's Counsel analyzed these data and constructed a damages model.  *Id.*  The parties prepared detailed mediation briefs setting forth their respective positions as to liability and damages, and exchanged them so that both sides could evaluate the strengths and weaknesses of their positions.  *Id.* ¶ 17.

After a full day mediation, the parties reached an agreement in principle.  *Id.* ¶ 18.  Over the next several weeks, the parties finalized the terms of the settlement and executed the formal Joint Stipulation of Settlement and Release ("Agreement") on March 16, 2018.  *Id.* ¶ 19.

## SUMMARY OF SETTLEMENT TERMS

### I. The Settlement Fund

The Agreement establishes a Gross Settlement Amount of $220,000.00, from which individual Settlement Awards will be paid to Eligible Settlement Collective Members who join the settlement. Ex. 1 (Agreement) ¶ 1.13.[2] The Gross Settlement Amount also covers any Court-approved Service Awards, the Settlement Administrator's fees and costs, and Plaintiff's Counsel's Court-approved attorneys' fees and costs, as described further below. *Id.*

### II. Eligible Employees

Eligible Settlement Collective Members includes 98 individuals who worked as AMs during the relevant period (October 19, 2015 and January 30, 2018). *Id.* ¶¶ 1.2, 1.28.

### III. Settlement Notice Procedure

The Settlement Notice will inform each Eligible Settlement Collective Member of the nature of the claims, the terms of the settlement, his or her estimated Settlement Award, the scope of the release, and his or her right to decide whether to participate in the settlement. Ex. 1 (Agreement, Ex. A (Settlement Notice)). The Settlement Administrator will mail and e-mail Settlement Notices to all Eligible Settlement Collective Members and post the Settlement Notice on a website. Ex. 1 (Agreement) ¶ 2.7. The Settlement Administrator will take all reasonable steps to obtain the correct address of any Eligible Settlement Collective Member for whom the Settlement Notice is returned as undeliverable, and will attempt re-mailings in the event better address information is obtained. *Id.* ¶ 2.8. Eligible Settlement Collective Members will have 60 calendar days to return a properly-executed and completed Consent to Join and Release Form to

---

[2] Unless otherwise indicated, all exhibits are attached to the Stewart Decl., and all capitalized terms have the definitions set forth in the Settlement Agreement.

the Settlement Administrator, via mail, e-mail, or uploading it to the website. *Id*. ¶ 1.4; *id.*, Ex. A (Settlement Notice). The Settlement Administrator will mail and e-mail a reminder notice to any Eligible Settlement Collective Member who has not yet returned a completed Consent to Join and Release Form halfway through the notice period. Ex. 1 (Agreement) ¶ 2.9; *see also id.*, Ex. B (Reminder Postcard).

Eligible Settlement Collective Members who submit a valid, timely Consent to Join and Release Form will be considered "Participating AMs" entitled to receive a portion of the Net Settlement Amount. *See* Ex. 1 (Agreement) ¶¶ 1.22, 2.10.

## IV. Release

Only individuals who participate in the settlement will release claims – those who do not participate will not release any claims. *Id*. ¶ 4.2. Participating Settlement Collective Members will release state and federal claims for unpaid overtime claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, that accrued during their employment as AMs from October 19, 2015 and through the Approval Date. *Id.* ¶ 4.1.

## V. Allocation Formula

Eligible Settlement Collective Members' individual Settlement Awards will be calculated pursuant to an allocation formula based on the number of weeks they worked during the relevant period. *See id.* ¶¶ 1.28, 3.4. Each Eligible Settlement Collective Member shall be assigned one point for each week in which he or she was employed as an AM during the relevant period. *Id.* ¶ 3.4(i)(a). To calculate the proportionate share of the Net Settlement Fund for each Eligible Settlement Collective Member, the Settlement Administrator will add all points for all Eligible Settlement Collective Members together to obtain the "Denominator." *Id.* ¶ 3.4(i)(b)(1). The Settlement Administrator will then divide the number of points for each Eligible Settlement

4

Collective Member by the Denominator to obtain each Eligible Settlement Collective Member's "Portion of the Net Settlement Fund." *Id.* ¶ 3.4(i)(b)(2). The Settlement Administrator will then multiply each Eligible Settlement Collective Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine his or her estimated settlement award. *Id.* ¶ 3.4(i)(b)(3).

For tax purposes, 50 percent of the Settlement Award to an Eligible Settlement Collective Member will be treated as back wages and 50 percent of such Settlement Award will be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief. *Id.* ¶ 3.4(v)(a). Any portion of the Net Settlement Fund that remains unclaimed by Eligible Settlement Collective Members shall revert to Platinum Corral. *Id.* ¶¶ 3.1(viii), 3.4(iv). In addition, 120 days after the issuance of settlement checks, any check not cashed shall become part of the reversion to Platinum Corral. *Id.* ¶ 3.4(iv).

## VI.     Service Awards

The Agreement provides that, subject to Court approval, Plaintiff Scott Johnson will receive a $5,000 service award and Opt-In Plaintiff Robert Cooper will received a $2,500 service award, in recognition of assistance they rendered in obtaining the benefits of the settlement for the collective, as well as the risks they took to do so, and in consideration of executing a general release. *Id.* ¶¶ 3.3(i), 4.3.

## VII.    Settlement Administration

The parties have retained American Legal Claim Services, LLC ("ALCS"), a third-party claims administrator, to serve as the Settlement Administrator. Stewart Decl. ¶ 21. Courts routinely approve ALCS as a settlement administrator. *See, e.g.*, *Azogue v. 16 for 8 Hosp. LLC*, No. 13 Civ. 7899, 2016 WL 4411422, at *6 (S.D.N.Y. Aug. 19, 2016). ALCS's fee, estimated to be $11,733, will be paid from the Gross Settlement Amount. Ex. 1 (Agreement) ¶ 1.19.

## VIII.   Attorneys' Fees and Litigation Costs

Under the Agreement, subject to Court approval, Plaintiff's Counsel will receive $73,333.33 (one-third of the $220,000.00 settlement) as attorneys' fees, plus reimbursement of $6,893.34, which represents reasonable out-of-pocket costs and expenses incurred in litigation and resolving this matter.  Stewart Decl. ¶¶ 32, 33; Ex. 5 (Decl. of Gregg I. Shavitz ("Shavitz Decl.")) ¶ 13; Ex. 6 (Decl. of Drew Legando ("Legando Decl.")) ¶ 10.

## **ARGUMENT**

## I.   **A One-Step Approval Process Is Standard for FLSA Settlements.**

In the Sixth Circuit, and throughout the country, a one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include Rule 23 classes.[3]  This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class actions.  *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA.").  Unlike Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in to be bound by any judgment.  *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002).

---

[3]    *See, e.g.*, *Edwards v. City of Mansfield*, No. 15 Civ. 959, 2016 WL 2853619, at *4 (N.D. Ohio May 16, 2016); *Bradford v. Legacy Health Servs.*, No. 13 Civ. 218, 2014 WL 7185453, at *2 (N.D. Ohio Dec. 16, 2014); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014); *see also Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Bravo v. 57th Rest. Assocs. LLC*, No. 14 Civ. 8492, 2015 WL 1283659, at *1 (S.D.N.Y. Apr. 9, 2015) (approving one-step settlement); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014) (same).

Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23.").  Where, as in this matter, individuals are not part of the settlement unless they decide to participate in it, there is no need to require that the settlement provide for opt-outs or objections.[4]

## II.    The Settlement Is Fair and Reasonable and Should Be Approved.

Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve bona fide disputes.[5]  If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement.  *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008); *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007).

The settlement in this case easily meets the standard for approval.  It was the result of extensive investigation, contested litigation, exchange of formal and informal discovery, and substantial arm's-length negotiations between experienced counsel assisted by a private mediator.  Stewart Decl. ¶¶ 36; *see Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *2 (S.D. Ohio July 11, 2014) (approving FLSA settlement where it was "the result of arm's-length negotiations, free of collusion or fraud conducted by experienced counsel for all

---

[4]    *Woods v. New York Life Ins. Co*., 686 F.2d 578, 580 (7th Cir. 1982) ("The difference between a Rule 23 class action and a section 16(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

[5]    *See, e.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014); *Dillworth v. Case Farms Processing, Inc.*, No. 05 Civ. 1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010); *Kritzer v. Safelite Solutions, LLC*, No. 10 Civ. 0729, 2012 WL 1945144, at * 5-8 (S.D. Ohio May 30, 2012).

parties, and achieved through a formal mediation conducted by a neutral mediator").

The settlement amount is reasonable in light of the considerable risk that Plaintiff faced. The average net settlement award for each collective member is approximately $1,056.59 (after deductions for attorneys' fees and costs, service awards, and administration costs). Stewart Decl. ¶ 37. By Plaintiff's Counsel's estimation, this is a substantial percentage of the collective's lost wages, Stewart Decl. ¶ 38, and it is similar to the range of recoveries in several other court-approved restaurant manager misclassification settlements. *See, e.g.*, *Castillo v. Noodles & Co.*, No. 16 Civ. 3036, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (approving settlement of restaurant manager misclassification claims with an average net settlement award of $1,329.62); *Alli v. Boston Market Corp.*, No. 10 Civ. 4 (D. Conn. Dec. 9, 2011), ECF No. 152 (preliminarily approving settlement with average net settlement award of $945.91), *final approval granted by* ECF No. 183 (Apr. 17, 2012) (orders attached as Exs. 2, 3); *see also In re Am. Family Mut. Ins. Co. Overtime Pay Lit.*, No. 06 Civ. 17430, 2010 WL 9593857 (D. Colo. Dec. 14, 2010) (approving settlement of misclassification claims with average award of $1,250 per collective member).

Although Plaintiff believes his case is strong, it is subject to considerable risk. First, there was a risk that Plaintiff's motion for collective certification would not succeed or that he would be unable to maintain a collective through trial. Platinum Corral would likely argue that the differences among various restaurants and other individualized questions would warrant decertification of the collective. Although Plaintiff disagrees, employers have prevailed on such arguments. *See, e.g.*, *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 856 (N.D. Ohio 2013) (individualized employment factors favored decertification of FLSA collective).

Second, a trial on the merits would involve significant risks as to liability. Even if

8

Plaintiff could maintain a collective throughout trial, he would have to defeat Platinum Corral's argument that AMs were subject to bona fide executive and administrative exemptions. The exempt status of managers under the FLSA is highly contextual with decisions pointing in both directions. The circumstances in *Thomas v. Speedway SuperAmerica, LLC*, illustrate the challenges of pursuing claims under the executive exemption. 506 F.3d 496, 504-09 (6th Cir. 2007). In that case, the district court granted summary judgment to the defendant on the grounds that managers were properly classified as exempt employees. *Thomas v. Speedway SuperAmerica, LLC*, No. 04 Civ. 00147, 2006 WL 4969500, at *12 (S.D. Ohio Mar. 31, 2006). The Sixth Circuit affirmed, despite the plaintiff's compelling argument that managers performed extensive non-managerial tasks. *Thomas*, 506 F.3d at 504-09. Other employers in this Circuit have succeeded in establishing their exemption defenses after protracted litigation. *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 902 (6th Cir. 2012) (after eight years of litigation, affirming jury verdict that mortgage bankers were properly classified as exempt from overtime under the FLSA); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640, 650-51 (6th Cir. 2013) (same for special investigators following bench trial and five years of litigation). Although Plaintiff believes these cases are distinguishable from this case, and that he could ultimately establish Platinum Corral's liability, this would require significant factual development and considerable risk.

Third, a trial on the merits would involve significant risks as to damages. Plaintiff would have to prove willfulness in order to obtain a third year of liability for damages, and establish that Collective Members worked over 40 hours a week – a risk given the absence of contemporaneous time records.

Fourth, there is a serious risk that Plaintiff would not be able to recover even if the Court

entered judgment in his favor, or that any recovery would be seriously delayed or discounted in a bankruptcy process. Platinum Corral repeatedly represented to Plaintiff's Counsel that its financial condition is fragile, and at mediation provided detailed financial information to support that claim. Stewart Decl. ¶ 20. The risk that Plaintiff would have to expend time, costs, and resources to collect on a judgment or pursue unpaid wages in bankruptcy court, supports this settlement. *See, e.g.*, *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303-04 (E.D.N.Y. 2015) (weighing risk of non-collection or bankruptcy in favor of settlement approval).

The proposed allocation of the settlement is also reasonable. It reflects a proportion of damages owed to Eligible Settlement Collective Members based on the number of weeks they worked for Platinum Corral, which is a reasonable approximation of their damages. Ex. 1 (Agreement) ¶ 3.4(i); *see, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 09 Civ. 1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (approving allocation based on weeks worked).

III. **The Settlement Notice Adequately Informs Collective Members of the Terms of the Settlement.**

The Court should approve the proposed Settlement Notice. *See* Ex. 1 (Agreement, Ex. A (Settlement Notice)). The proposed Settlement Notice sufficiently informs Eligible Settlement Collective Members of the allocation formula, the steps they must follow in order to participate, the consequences of non-participation, the monetary amount to which they are entitled under the settlement, the scope and mechanism of the release of claims, the request for attorneys' fees and costs, and other terms of the Agreement. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The proposed Settlement Notice here provides "accurate and timely notice concerning the pendency of the collective action so that each individual has the opportunity to make an informed decision regarding whether to opt-in to the settlement." *Bassett v. Tennessee*

*Valley Auth.*, No. 09 Civ. 39, 2010 WL 3092251, at *2 (W.D. Ky. Aug. 5, 2010) (citing *Garcia*

*v. Pancho Villa's of Huntington Village, Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010)) (internal

citations omitted).

## IV. The Service Awards Should Be Approved as Fair and Reasonable.

Plaintiff requests approval of Service Awards of $5,000 for Plaintiff Scott Johnson and

$2,500 for Opt-In Plaintiff Robert Cooper.  Ex. 1 (Agreement) ¶ 3.3.  The Service Awards

recognize the time and effort they expended in furtherance of the litigation and settlement,

including initiating the lawsuit and informing counsel of the facts initially, providing facts and

documents to counsel, submitting declarations, conferring with counsel about the lawsuit, and

assisting with the mediation and damages analysis.  Stewart Decl. ¶ 39.

Courts in the Sixth Circuit recognize that in common fund cases and where the settlement

agreement provides for service awards, plaintiffs who have had extensive involvement in the

litigation deserve compensation above and beyond amounts to which they are entitled to by

virtue of class membership alone.[6]  Service awards "are common in class action settlement[s] . . .

'to compensate named plaintiffs for the services they provided and the risks they incurred during

the course of the class action litigation.'"  *Kritzer v. Safelite Sols.*, LLC, No. 10 Civ. 0729, 2012

WL 1945144, at *8 (S.D. Ohio May 30, 2012) (citing *Rotuna*, 2010 WL 2490989, at *7).[7]

---

[6]   *See Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) ("Incentive awards are typically awards to class representatives for their often extensive involvement with a lawsuit."); *see also Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (approving an incentive award and noting that such awards are typical in the Sixth Circuit).

[7]   *See also, e.g.*, *Thornton v. East Texas Motor Freight*, 497 F.2d 416, 420 (6th Cir. 1974) (approving theory behind incentive awards in Title VII class action); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (approving $50,000 to each of the six class representatives from a common fund); *In re Dun & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (approving awards in the

The proposed Service Awards are well within the range of awards that courts within this judicial circuit regularly and routinely grant under these circumstances.[8]

## V.    Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.

Plaintiff's request for one-third of the Gross Settlement Amount for their attorneys' fees plus reimbursement of actual out-of-pocket costs and expenses is reasonable.  *See* Ex. 1 (Agreement) ¶ 3.2(i).  This is particularly true where, as here, Plaintiff's Counsel's lodestar fees far exceed the percentage of the fund requested.

### A.    The Percentage Method Is Appropriate for Awarding Attorneys' Fees in Common Fund Settlements in Wage and Hour Cases.

When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Smillie v. Park Chemical Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 640 F. Supp. 697, 699-700 (S.D. Ohio 1986).  This is "founded on the equitable principle that those who have profited from litigation should share its costs."  *In re Thirteen Appeals*, 56 F.3d 295, 305 n.6 (1st Cir. 1995).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage-of-the-fund method[9]—courts routinely

---

amounts of $35,000 and $55,000 to five class representatives from a common fund).

[8]    *See, e.g.*, *Waggoner v. U.S. Bancorp*, No. 14 Civ. 1626, 2016 WL 7474408, at *4 (N.D. Ohio Dec. 29, 2016) (approving service awards of $10,000 each for the named plaintiff and discovery opt-in plaintiffs); *Heibel v. U.S. Bank Nat'l Ass'n*, No. 11 Civ. 00593, 2014 WL 12591848, at *2 (S.D. Ohio May 21, 2014) (approving $5,000 each to a group of six named plaintiffs and $2,000 each to a group of 15 class representative plaintiffs); *Kritzer*, 2012 WL 1945144, at *18 (awarding $15,000 to the named plaintiffs in FLSA settlement); *Dillworth*, 2010 WL 776933, at *7 (awarding named plaintiffs $6,000 and $4,000 for their service to the FLSA collective).

[9]    *See, e.g.*, *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016); *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir.1993); *Bailey v. AK Steel Corp.*, No. 06 Civ. 468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008).

favor awarding fees in common fund cases based upon a percentage of the fund. *In re Thirteen Appeals*, 56 F.3d 295 at 306-07 ("use of the [percentage of the fund] method in common fund cases is the prevailing praxis"); *see also Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014) (adopting the percentage approach as "the most appropriate method for determining reasonable attorneys' fees" in wage and hour case); *Feiertag v. DDP Holding, LLC,* No. 14 Civ. 2643, 2016 WL 4721208, at *1, *7 (S.D. Ohio Sept. 9, 2016); *Rotuna*, 2010 WL 2490989, at *1, 8; *Dillworth*, 2010 WL 776933, at *7-8.

There are several reasons why the Court should choose the percentage method. First, this method is appropriate in wage and hour cases where "the damages which could have been claimed by each class member [are] relatively modest … for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey v. Packerland Plainwell, Inc.*, No. 06 Civ. 95, 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than [themselves] or [their] client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* (quoting *Boeing*, 444 U.S. at 478).

Second, the percentage of the fund method promotes judicial economy because it "encourages early settlement, which avoids protracted litigation," *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016), and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours. *See Rawlings*, 9 F.3d at 517 (lodestar method "provides incentives for overbilling"); *In re Thirteen Appeals*, 56 F.3d at 307 (percentage method "enhances efficiency"). It "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). As the Ninth Circuit held, "the lodestar method does not

reward early settlement" and "class counsel should [not] necessarily receive a lesser fee for settling a case quickly." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).

Third, recovery of fees based on the percentage of the fund method allows the court to "spread[] fees proportionately among those benefited by the suit." *Boeing*, 444 U.S. at 478; *see also Chesher v. Neyer*, No. 01 Civ. 0566, 2007 WL 4553908, at *1 (S.D. Ohio Dec. 19, 2007) ("where, as here, a class plaintiff successfully recovers a common benefit for the class, the costs of litigation should be spread among the beneficiaries").

Fourth, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents. *In re Thirteen Appeals*, 56 F.3d at 301 ("[T]he [percentage of the fund] method permits the judge to focus on a showing that the fund conferring a benefit on the class resulted from the lawyers' efforts.") (internal quotation marks omitted); *Rawlings*, 9 F.3d at 516 ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources.").

The size of this $220,000.00 settlement weighs in favor of granting a fee award of one-third of the common fund.  Courts routinely grant requests for one-third of the fund in cases with settlement funds similar to or substantially larger than this one.[10]

---

[10]  *See, e.g.*, *Swigart*, 2014 WL 3447947, at *7 ("award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts"); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 11 Civ. 1061, 2013 WL 2295880, at *1 (S.D. Ohio May 24, 2013) (awarding 33% of $452,380 settlement fund).

**B.      The Sixth Circuit's Award Factors Support Approval of Plaintiff's Counsel's Fees.**

Reasonableness is the touchstone for determining attorneys' fees.  In determining what constitutes a reasonable percentage of the fund for attorneys' fees, the Sixth Circuit approved six factors: (1) the value of the benefit rendered to the collective; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingency fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.  *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996).

**1.      The Settlement Bestows Significant Benefit to the Participating Settlement Collective Members.**

This Settlement confers a significant benefit on the collective.  Each worker who joins the collective for settlement purposes will receive a *pro rata* share of the Net Settlement Amount based on the number of workweeks they worked during the relevant period.  Ex. 1 (Agreement) § 3.4(i)(a).

Plaintiff's Counsel's fee should be calculated as a percentage of the full amount of money that the settlement made available to the Eligible Settlement Collective Members.  This is the best measure of what Plaintiff's Counsel accomplished.  *See Gascho*, 822 F.3d at 282 ( "right to share the harvest of the suit . . ., *whether or not they exercise it*, is a benefit in the fund created by the efforts of class representatives and their counsel") (quoting *Boeing*, 444 U.S. at 480) (emphasis in original); *accord Gokare v. Fed. Express Corp.*, No. 11 Civ. 2131, 2013 WL 12094887, at *6 (W.D. Tenn. Nov. 22, 2013).

**2.      Plaintiff's Counsel Expended Substantial Time and Labor.**

Achieving the $220,000.00 settlement required significant effort by Plaintiff's Counsel.

At the outset of the representation, Plaintiff's Counsel investigated and evaluated the claims, the damages to which Eligible Collective Members were entitled, and the propriety of collective action certification. Stewart Decl. ¶¶ 22. Plaintiff's Counsel obtained and reviewed documents from AMs and from publicly available sources. *Id.* Plaintiff's Counsel also conducted in-depth interviews of AMs, filed a Motion for Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), negotiated an ESI protocol, prepared and served written discovery requests, engaged in pre-mediation informal discovery, prepared a detailed mediation brief, analyzed payroll data to perform a detailed damages analysis, attended a full-day mediation, and negotiated the settlement. *Id.* Prior to settlement, Plaintiff's Counsel vigorously litigated these claims. *See id.* ¶¶ 13-14.

Plaintiff's Counsel expended significant resources to investigate, file, litigate, and attempt to resolve the matter: co-counsel firms' attorneys, staff, and paralegals worked approximately 516 hours on this matter to date, or an aggregate lodestar of approximately $208,522.50. *Id.* ¶¶ 26-30; Shavitz Decl. ¶ 14; Legando Decl. ¶ 11. These hours are reasonable and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff member participating in the case. Stewart Decl. ¶¶ 28-29; Shavitz Decl. ¶ 14; Legando Decl. ¶ 11. Plaintiff's Counsel used a small team of attorneys at any one time in order to minimize duplication of efforts and maximize billing judgment and made every effort to have the work performed by the attorney or paralegal with the lowest hourly rate who was able to effectively perform it. Stewart Decl. ¶ 29.

Moreover, the requested fee is not based solely on time and effort already expended. It should also compensate Plaintiff's Counsel for time that will be spent administering the settlement in the future. Stewart Decl. ¶ 34; *cf. In re Colgate-Palmolive Co. ERISA Litig.*, 36 F.

Supp. 3d 344, 347 (S.D.N.Y. 2014) (noting that time records submitted with fee petitions "exclude[] time . . . that will be spent administering the settlement"). In Plaintiff's Counsel's experience, administering settlements of this nature requires an ongoing commitment. Stewart Decl. ¶ 35. As is common in wage and hour collective actions, Plaintiff's Counsel expects to respond to inquiries from Eligible Collective Members after approval of the settlement. *Id.*

Here, Plaintiff's Counsel's request for one-third of the Gross Settlement Amount, or $73,333.33, is less than their $208,522.50 lodestar. Stewart Decl. ¶ 31. The time and labor expended by Plaintiff's Counsel further supports the amount of fees requested. *See, e.g.*, *Kritzer*, 2012 WL 1945144, at *10 (finding request for up to 52 percent of total recovery reasonable where lodestar was more than amount requested).

### 3.      Plaintiff's Counsel Undertook the Litigation on a Contingent Basis.

Plaintiff's Counsel undertook to prosecute this wage and hour collective action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of significant risk. Stewart Decl. ¶ 23. "Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart*, 2014 WL 3447947, at *7. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. *Id.* Due also to the contingent nature of the fee shifting statute, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. *Id.* at *6. Plaintiff's Counsel stood to gain nothing in the event the case was unsuccessful. *Id.*; *see In re Whirlpool*, No. 08 WP 65000, 2016 WL 5338012, at *23 (N.D. Ohio Sept. 23, 2016) (on a purely contingent basis, "counsel has borne all the risk . . ., including the prospect . . . that the investment . . . would be lost").

17

Plaintiff's Counsel takes on difficult cases like this one because we believe that they are important. *Id.* ¶ 24. Plaintiff's Counsel takes seriously our responsibility to push the law in a direction favorable for employees. *Id.* Plaintiff's Counsel continues to do so despite, unfortunately, having suffered several major (and very expensive) losses in wage and hour cases over the years. *Id.* Plaintiff's Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. *Id.* ¶ 25. In light of the risk of continuing to litigate Plaintiff's claims, as well as the excellent monetary benefit to all Eligible Collective Members, this factor weighs in favor of granting Plaintiff's Counsel's requested attorneys' fees. *Rotuna*, 2010 WL 2490989, at *8; *Dillworth*, 2010 WL 776933, at *8.

### 4. Public Interest Favors Approval of Attorneys' Fees.

Public policy considerations also weigh in favor of granting Plaintiff's Counsel's requested fees. The FLSA is a remedial statute designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of such statutes. "[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, No. 07 Civ. 430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011). Accordingly, "[e]ncouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society." *Whitlock v. FSL Mgmt., LLC*, No. 10 Civ. 00562, 2015 WL 9413142, at *9 (W.D. Ky. Dec. 22, 2015); *see also In re Whirlpool*, 2016 WL 5338012, at *23.

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future

misconduct of a similar nature.  *See Deposit Guar. Nat'l Bank v. Roper, Jackson, Miss.*, 445 U.S.

326, 338-39 (1980).  Where, as here, many of the Eligible Collective Members may be

financially unable to pursue an action on their own or have damages that are too small to justify

the litigation, "attorneys who take on class action matters enabling litigants to pool their claims

provide a huge service to the judicial process' and should be rewarded for their efforts." *In re*

*Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 08 Civ. 01998, 2010 WL

3341200, at *9 (W.D. Ky. Aug. 23, 2010).  Accordingly, "the public has an interest in

compensating [Plaintiff's] Counsel here, because recoveries in this case are far too small if

pursued on an individual basis, leaving only contingent-fee class actions as a mechanism to

pursue viable claims." *In re Whirlpool*, 2016 WL 5338012, at *23; *see also Feiertag*, 2016 WL

4721208, at *7; *Kritzer*, 2012 WL 1945144, at *9.

### 5. This Wage and Hour Collective Action is Complex.

Wage and hour collective actions are "frequently complex matters." *Gentrup*, 2011 WL

2532922, at *4; *see also Beckman*, 293 F.R.D. at 479.  The twenty-one defenses Platinum Corral

asserted are complex, including FLSA exemptions, good faith, and various equitable doctrines.

ECF No. 28 (Answer).  In addition, Plaintiff faced difficulty establishing the "willful" violation

by Platinum Corral under the FLSA to capture the third year of damages.  This factor weighs in

favor of awarding the requested fees.

### 6. The Quality of Representation and Professional Skill of Plaintiff's and Defendants' Counsel Support Approval of the Requested Fees.

Plaintiff's Counsel has significant experience prosecuting large-scale wage and hour class

and collective actions.  Stewart Decl. ¶ 12 (listing cases); Shavitz Decl. ¶¶ 5-6; Legando Decl.

¶¶ 5-7.  Plaintiff's Counsel's skill and experience were directly responsible for the favorable

settlement and weigh in favor of granting the requested fees.

### C. Plaintiff's Counsel Are Entitled to Reimbursement of Reasonable Expenses Under the Agreement.

Plaintiff's Counsel request reimbursement of $6,893.34 in out-of-pocket expenses to be paid from the Gross Settlement Amount. Stewart Decl. ¶ 32; Shavitz Decl. ¶ 13; Legando Decl. ¶ 10. An award of a "reasonable attorneys' fee" includes the authority to award reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to a fee-paying client in the course of providing legal services. *Northcross v. Bd. of Educ. of Memphis City Schs.*, 611 F.2d 624, 639 (6th Cir. 1979) (applying 42 U.S.C. § 1988). "Where attorneys' fees are expressly authorized by statute, . . . the court . . . is authorized to include litigation expenses as part of a reasonable attorneys' fee." *Renfro v. Ind. Mich. Power Co.*, No. 99 Civ. 877, 2007 WL 710138, at *1 (W.D. Mich. Mar. 6, 2007), *overruled on other grounds*, 497 F.3d 573 (6th Cir. 2007).

Plaintiff's Counsel's actual expenses of $6,893.34 were necessary to the representation of the Eligible Collective Members. Stewart Decl. ¶ 32; Shavitz Decl. ¶ 13; Legando Decl. ¶ 10. These include court fees, mediation fees, postage, transportation, travel expenses, working meals, photocopies, and computer research. *See id.* As such, these costs should be awarded.

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court issue an order: (1) approving the $220,000.00 settlement set forth in the Agreement; (2) approving the proposed Settlement Notice and directing its distribution; (3) approving Service Awards of $5,000 to Named Plaintiff and $2,500 to Opt-In Plaintiff; (4) approving Plaintiff's request for one-third of the settlement fund for attorneys' fees, plus reimbursement of costs and expenses; (5) approving ALCS as the Settlement Administrator and approving payment of $11,733 for its fees, expenses, and costs; and (6) incorporating the terms of the Agreement.

Dated: March 30, 2018                    Respectfully submitted,

By: */s/ Melissa L. Stewart*
     Melissa L. Stewart

**OUTTEN & GOLDEN LLP**
Justin M. Swartz (admitted *pro hac vice*)
Melissa L. Stewart (admitted *pro hac vice*)
Christopher M. McNerney (admitted *pro hac vice*)
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted *pro hac vice*)
Alan Quiles (admitted *pro hac vice*)
1515 S. Federal Highway
Boca Raton, Florida 33432
Telephone: (561) 447-8888

Michael Palitz (admitted *pro hac vice)*
830 3rd Avenue, 5th Floor
New York, New York 10022
Telephone: (800) 616-4000

**LANDSKRONER GRIECO MERRIMAN LLC**
Drew Legando (0084209)
1360 West Ninth Street, Suite 200
Cleveland, Ohio 44107
Telephone: (216) 522-9000

*Attorneys for Plaintiff and the Putative Collective*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2018, the above document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

By: */s/ Melissa L. Stewart*
Melissa L. Stewart