# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| SCOTT JOHNSON, on behalf of himself and all others similarly situated, | Case No. 17 Civ. 0399 (GCS) (EPD) |
| Plaintiff, | |
| v. | Hon. George C. Smith |
| PLATINUM CORRAL LLC; PLATINUM CORRAL MANAGEMENT, LLC, | |
| Defendants. | |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Scott Johnson (the "Named Plaintiff"), individually and on behalf of the collective of individuals he seeks to represent, including Robert Cooper ("Opt-in Plaintiff") (collectively with Named Plaintiff, "Plaintiffs"), and Defendants, Platinum Corral LLC and Platinum Corral Management, LLC (collectively "Defendants") (together with Plaintiffs, the "Parties").

### RECITALS

**WHEREAS**, the Named Plaintiff has filed a Collective Action Complaint asserting claims against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for the alleged failure to pay overtime compensation to Plaintiffs (the "Litigation");

**WHEREAS**, the purpose of this Agreement is to settle the claims asserted in the Litigation, relating to the alleged non-payment of overtime to individuals employed in the exempt-classified positions of Associate, Assistant, Service, or Kitchen Managers (collectively, "AMs"), for overtime hours worked between October 19, 2015 and January 30, 2018.

**WHEREAS**, Defendants deny all allegations made by Named Plaintiff in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

**WHEREAS**, the Parties agreed in October 2017 to engage in discussions regarding the possibility of a voluntary resolution of the claims asserted in the Litigation;

**WHEREAS**, on January 30, 2018, the Parties participated in a full-day mediation session of this matter in Raleigh, North Carolina, which was conducted by experienced mediator,

Jonathan Harkavy, and the Parties reached an accord resulting in this Agreement; and

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with Named Plaintiff and Opt-in Plaintiff, obtained and reviewed documents relating to Defendants' compensation policies and practices, and analyzed payroll data and corporate financial data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the Plaintiffs' best interests.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to settle the Litigation on the following terms and conditions.

## 1. DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.2 "Associate, Assistant, Service, or Kitchen Managers" or "AMs" or "AM" shall mean any employee of Defendants who held the position of Associate Manager, Assistant Manager, Service Manager, or Kitchen Manager (however variously titled) at any time between October 19, 2015 and January 30, 2018.

1.3 "Claim Forms" shall mean the claim form included in the Settlement Notice, as defined below, for Eligible AMs to opt-in to the litigation.

1.4 "Claim Period" shall mean: (i) the 60-calendar-day period beginning immediately after the Settlement Administrator first mails a Settlement Notice and Claim Form; or (ii) for individuals receiving a first or second re-mailing, the forty-five (45) days from the Settlement Administrator's first or second re-mailing (whichever occurs later) of a Settlement Notice and Claim Form that was returned as undeliverable.[1]

1.5 "Complaint" means the First Amended Collective Action Complaint, dated June 30, 2017.

1.6 "Court" means the United States District Court for the Southern District of Ohio.

1.7 "Defendants" means Platinum Corral LLC and Platinum Corral Management, LLC.

---

[1]     All time periods provided by this Agreement are stated in calendar days, not business days, unless otherwise specifically identified.

**1.8** "Defendants' Counsel" means Ward and Smith, P.A.

**1.9** "Effective Date" is the later of 31 days after: (i) the Court's Order Granting Approval of Settlement and this Agreement, if no appeal is taken of such Order, or (ii) the Court's entry of a final order and judgment after any appeals are resolved.

**1.10** "Eligible AM" or "Eligible Settlement Collective Member(s)" shall mean any and all current and former employees employed by Defendants in the position of AM, however variously titled, in the Relevant Period, as defined below.

**1.11** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.12** "Fully Funded," in reference to the Net Settlement Fund, means that the Defendants have paid sufficient funds into the QSF to make all disbursements required by this Agreement, including attorneys' fees and costs approved by the Court; any and all amounts to be paid to Participating AMs; the cost of settlement administration; and the Court-approved service awards, and Defendants are not obligated to make any further payments into the QSF.

**1.13** "Gross Settlement Amount" means Two Hundred Twenty Thousand Dollars ($220,000.00), which is the maximum amount that Defendants have jointly and severally agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Participating AMs; the cost of settlement administration; and any Court-approved service awards. Defendants shall pay Employer Payroll Taxes separately, in addition to the Gross Settlement Amount. Other than this Employer Payroll Taxes obligation, Defendants will not be required to pay any more than the gross total of Two Hundred Twenty Thousand Dollars ($220,000.00), which is limited to the Eligible AMs Defendants disclosed in the pre-mediation data exchange and the four eligible AMs hired following the pre-mediation exchange. In the event that additional Eligible AMs are discovered, the Parties agree to discuss resolving those claims as part of the Settlement Agreement. However, the total amount payable may increase should Defendants fail to timely make their payment obligations pursuant to this Settlement, or should the number of Eligible AMs increase beyond 98.

**1.14** "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible AM as shown in Defendants' records.

**1.15** "Last Known E-mail Address" or "Last Known E-mail Addresses" means the most recently recorded personal e-mail address for an Eligible AM as shown in Defendants' records.

**1.16** "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile and/or home telephone number for an Eligible AM as shown in Defendants' records.

1.17     "Litigation" or the "Lawsuit" or the "Action" shall mean the lawsuit entitled *Johnson v. Platinum Corral, et. al.*, No. 17 Civ. 399 (S.D. Ohio).

1.18     "Named Plaintiff" means Scott Johnson.

1.19     "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions/payments for Court-approved: (i) Plaintiffs' Counsel's attorneys' fees and costs; (ii) Settlement Administration fees and costs; and (iii) service awards to Service Award Recipients.

1.20     "Opt-in Plaintiff" means Robert Cooper.

1.21     "Order Granting Approval of Settlement" or "Approval Order" means an order entered by the Court, which gives final approval to the Settlement and this Agreement, and enters final judgment.

1.22     "Participating AM" means all Eligible AMs who timely execute and return a Claim Form. Named Plaintiff and Opt-in Plaintiff shall be considered Participating AMs regardless of whether they return a timely executed Claim Form.

1.23     "Parties" collectively means the Named Plaintiff, Opt-in Plaintiff, and Defendants.

1.24     "Plaintiffs" shall mean the Named Plaintiff, the collective of individuals that he seeks to represent, and Opt-in Plaintiff.

1.25     "Plaintiffs' Counsel" means Outten & Golden LLP, Shavitz Law Group, P.A., and Landskroner Grieco Merriman LLC.

1.26     "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

1.27     "Releasees" means Defendants and the other companies that comprise Platinum Corral LLC and Platinum Corral Management, LLC and their officers, directors, employees, agents, insurers, successors, predecessors, affiliates, parents, subsidiaries, attorneys, and other related entities.

1.28     "Relevant Period" means the time period between October 19, 2015 and January 30, 2018.

1.29     "Reminder Postcard" means the notification sent to all Eligible AMs who have not yet returned a Claim Form, 30 days following the mailing of the Settlement Notice reminding them to return a completed Claim Form prior to the end of the Claim Period if they wish to be Participating AMs.

**1.30**  "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

**1.31**  "Settlement Administrator" means American Legal Claim Services LLC.

**1.32**  "Settlement Amount" or "Settlement Amounts" means each Eligible AM's proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.33**  "Settlement Check" means the check issued to each Participating AM for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

**1.34**  "Settlement Notice" means the document entitled Notice of Settlement and Opportunity to Join Collective Action and Claim Form, to be approved by the Court in a form substantially similar to Exhibit A attached hereto.

**2.  APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT COLLECTIVE MEMBERS**

**2.1**  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2**  The Settlement Administrator will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice, Claim Form, and Reminder Postcards to Eligible AMs; creating and maintaining a website containing information about the Settlement and a method for Eligible AMs to submit Claim Forms; preparing and mailing Settlement Checks; distributing approved service awards and attorneys' fees and expenses; sending reminder postcards to Participating AMs who have not cashed their checks; calculating all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; calculating all Settlement Amounts to be paid to Participating AMs; retaining and providing a copy of Settlement Checks and redacted Claim Forms signed by the Participating AMs to Defendants' Counsel, and a copy of unredacted Claim Forms signed by Participating AMs to Plaintiffs' Counsel.  Disputed claims will be resolved by the Settlement Administrator.

**2.3**  The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement.  The Settlement Administrator shall provide such information to either Party upon request.  The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Settlement Notice and Claim Form, the claims administration process, and distribution of the Settlement Checks, as well as notifying the Parties once the Net Settlement Fund or QSF is Fully Funded.

**2.4**  Defendants agree to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Amounts, and assist the Settlement Administrator in locating Eligible AMs.  Defendants' records shall be presumed accurate.

**2.5**     Plaintiffs shall use their best efforts to file a Motion for Order Approving Settlement of Collective Action and Authorizing Notice of Settlement and Opportunity to Join Collective Action ("Approval Motion") within fourteen (14) days after the execution of this Agreement. Counsel will provide Defendants' Counsel with a draft of the Approval Motion for review and comment at least seven (7) days prior to filing it with the Court, and Defendants' Counsel will provide Plaintiffs' Counsel with their comments within five (5) days of receiving the draft Approval Motion. With the Approval Motion, Plaintiffs' Counsel also will file the Agreement together with the Approval Order and Settlement Notice and Claim Form, attached hereto as Exhibit A. Among other things, the Approval Motion will ask the Court to: (i) approve the Settlement as fair, adequate, and reasonable; (ii) approve the proposed Settlement Notice and the plan for its distribution; (iii) incorporate the terms of this Settlement; (iv) enter Judgment dismissing the case without prejudice, with leave to reinstate on or before 30 days after the Settlement is Fully Funded, and deemed dismissed with prejudice without further order of the Court if no such motion to reinstate is filed within that time; and (v) retain jurisdiction to enforce the Agreement.

**2.6**     Within seven (7) days of the date the Approval Order is issued, Defendants shall give the Settlement Administrator and Plaintiffs' Counsel a list, in electronic form, of all Eligible AMs' names, Last Known Addresses, Last Known E-mail Addresses, Last Known Telephone Numbers, social security numbers, and the dates of employment as AMs during the Relevant Period ("Collective List").

**2.7**     Settlement Notices will be e-mailed and mailed, via First Class United States Mail (with an enclosed addressed and postage paid return envelope) to Eligible AMs by the Settlement Administrator within twenty-one (21) days of the Effective Date. The Settlement Notice will advise Eligible AMs of their estimated Settlement Amount and of a website where they can submit their Claim Form and review additional information regarding the Settlement. Before mailing the Settlement Notice to Eligible AMs, the Settlement Administrator will perform a search of Eligible AMs using the U.S. postal service's change of address database.

**2.8**     The Settlement Administrator shall take all reasonable steps to obtain the correct address for any Eligible AM or Participating AM for whom the Settlement Notice or Settlement Check, respectively, is returned by the post office as undeliverable, including using social security numbers to obtain accurate and current address information, and shall attempt re-mailings. Any Settlement Notices or Settlement Check returned as undeliverable shall require the Settlement Administrator to request an updated mailing address from the Eligible AM by phone and/or e-mail, and shall also be traced up to two times to obtain a new address and be re-mailed (up to two times) to the Eligible AM by First Class United States Mail using the best information available to the Settlement Administrator.

**2.9**     The Settlement Administrator will also send Reminder Postcards via e-mail and First Class U.S. Mail thirty (30) days after the initial mailing or, for those Eligible AMs who receive a re-mailing, thirty (30) days after the re-mailing of the Settlement Notice to any Eligible AMs who, at the time of e-mailing and mailing the Reminder Postcard, have not returned an executed Claim Form. The Reminder Postcards will advise Eligible AMs of the last date on which they can timely return a Claim Form and of the address,

email, facsimile number, and website where they can submit their Claim Form and review additional information regarding the Settlement.

**2.10** The submission and processing of Claim Forms from Eligible AMs shall be in accordance with the following procedures.

    i.    To be timely, a Claim Form must be completed and provide the information as instructed on the Claim Form and be signed, dated and postmarked or otherwise returned (via, for example, fax, e-mail, or online submission) to the Settlement Administrator within the Claim Period. Claim Forms that are not timely returned are null and void, unless otherwise agreed to in writing by the Parties, upon a finding of good cause determined by the Settlement Administrator, or approved by the Court.

    ii.    If a Claim Form is returned to the Settlement Administrator and not properly completed as described above, within five (5) business days of its receipt, the Settlement Administrator shall send a notice to the relevant Eligible AM via First Class United States Mail and e-mail (if available) advising the Eligible AM of the defects ("Cure Letter") and include a new Claim Form to be completed (with an enclosed, postage paid return envelope).  The Settlement Administrator shall provide Plaintiffs' Counsel with a copy of the Cure Letter for approval prior to its issuance.  The Eligible AM shall then have the remainder of the Claim Period or fifteen (15) days from mailing of the Cure Letter ("Cure Period"), whichever is longer, to return the new Claim Form and provide the missing information.  If a new Claim Form is not received within the longer of the Claim Period or Cure Period, the Claim Form shall be null and void, unless otherwise agreed to in writing by the Parties, approved by the Court, or approved by the Settlement Administrator on a case-by-case basis for good cause shown.

    iii.    By the close of the Claim Period, Eligible AMs for whom a Claim Form has not been returned to the Settlement Administrator or whose Claim Form is not a valid Claim Form in compliance with this Section are not Participating AMs and do not release their claims against the Releasees as described in Section 4 below, but do waive any right to receive any payment associated with the Settlement.

**2.11** Plaintiffs' Counsel and Defendants' Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process, except that Defendants' Counsel is not entitled to updated contact information located by Settlement Administrator for Eligible AMs or provided by Participating AMs, or communications sent to and from Eligible AMs as such communications are subject to the attorney-client privilege.  The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendants' Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

**2.12** In the event that the Court fails to approve this Agreement, the Parties (a) will attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated settlement and agreement and/or (b) any or all Parties may seek reconsideration or appellate review of the decision denying approval of the Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

## 3. SETTLEMENT TERMS

### 3.1 Settlement Payments.

    i.    Defendants agree to pay Two Hundred Twenty Thousand Dollars ($220,000.00), which shall fully resolve and satisfy any and all amounts to be paid to Participating AMs, any Court-approved service awards, attorneys' fees and costs, as more fully set forth herein, and the Settlement Administrator's fees and costs. Defendants shall pay Employer Payroll Taxes for each Participating AM separate from, and in addition to, this settlement amount. Defendants' payment obligation may increase if the representations provided by Platinum Corral pre-mediation regarding the number of Eligible AMs materially change or if Defendants fail to make timely payments required by this Agreement, as specified in this Section 3.1.

    ii.    Within ten (10) days of the date all Parties have executed this Agreement, Defendants shall deposit $22,000.00 (the "Initial Payment") of the Gross Settlement Amount into the QSF.

    iii.    Within thirty (30) days of the Initial Payment, and recurring every thirty (30) days thereafter, Defendants shall make installment payments of Eight Thousand Two Hundred Fifty Dollars ($8,250.00) toward the total Gross Settlement Amount into the QSF. These installment payments shall continue until such time as the Settlement is Fully Funded and, if applicable, all additional payments due from Defendants as required by Section 3.1(iv) of this Agreement have been made. If, for any reason, the Settlement Administrator is unable to determine the amount owed, installment payments shall continue until the earlier of such time as the Settlement Administrator is able to determine that the Net Settlement Fund is Fully Funded or such time as the amount of all payments from Defendants are equal to the total of the Gross Settlement Fund plus, if applicable, any additional payments due from Defendants as required by this Agreement.

    iv.    In the event Defendants fail to timely make any payments as required by Section 3.1(iii), without further notice, beginning five (5) days after the

delinquent payment was initially due, interest will accrue on the remaining unpaid balance of the Gross Settlement Fund at a rate of 1% per month. Such interest shall accrue until such time as Defendants issue payment of the delinquent payment and any subsequent installment payments that have become due, plus the accrued interest incurred pursuant to this sub-section.

v. Also in the event Defendants fail to make a timely payment as required by Section 3.1(iii), in addition to all other relief set forth in this Agreement, Plaintiffs shall send a written notice of default and opportunity to cure default to Defendants and Defendants' Counsel pursuant to the notice requirements of this Agreement ("Default Notice"). Upon receipt of a Default Notice, Defendants shall have thirty (30) days in which to cure their deficiency ("Default Cure Period") by paying all amounts due plus any interest accrued thereon. In the event Defendants fail to cure the default within the Default Cure Period, the entire balance of the Gross Settlement Fund shall be immediately due and payable, and Plaintiffs may immediately submit a motion for entry of judgement for the balance of the gross fund, interest accrued thereon pursuant to this Agreement, legal costs incurred as a result of the default, and Plaintiffs' attorneys' fees of 15% of the total amount of the balance of the Gross Settlement Fund owed plus the interest accrued thereon, and costs incurred in bringing the motion. Defendants agree that they shall not oppose any motion for entry of judgment filed pursuant to this subsection.

vi. Within fourteen (14) days of the latter of the Effective Date or the date the Settlement is Fully Funded, the Settlement Administrator will partially distribute the money in the QSF by making the following payments:

(a) Paying Plaintiffs' Counsel's Court-approved attorneys' fees and costs as described in Section 3.2.

(b) Paying the Court-approved service award as described in Section 3.3.

(c) Paying the costs of the Settlement Administrator as described in Section 3.1.

vii. The Settlement Administrator will issue checks to Participating AMs for their Settlement Amounts, as described in Section 3.4, within twenty-one (21) days after the latter of the end of the Claim Period or the date the Settlement is Fully Funded.

viii. Each Eligible AM's Settlement Amount will be printed on his or her Settlement Notice. Any amount of the Net Settlement Fund not claimed by Eligible AMs will not be paid. Any and all amounts attributable to Eligible AMs who do not opt in shall revert to Defendants.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

    i.    In their Approval Motion, Plaintiffs' Counsel shall ask the Court to approve payment of one-third of the Gross Settlement Amount as an award of attorneys' fees.  In addition, Plaintiffs' Counsel shall seek reimbursement of actual case-related costs and expenses from the Gross Settlement Amount.  These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiffs agree that they shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case other than for any fees and costs incurred related to any efforts to enforce the terms of this Agreement, or pursuant to Section 3.1.

    ii.    The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement.  The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  In the event that the Court (or any appellate court) awards less than the requested amounts, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.  Any money requested for attorneys' fees or costs that are not approved by the Court shall become part of the Net Settlement Fund.

**3.3     Service Awards.**

    i.    In their Approval Motion, Named Plaintiff will apply to the Court to receive $5,000 for himself and payment of $2,500 to Opt-in Plaintiff Robert Cooper from the Gross Settlement Amount for the services they rendered to the settlement collective.  Any persons for whom the Court approves the payment of a service award is a "Service Award Recipient."

    ii.    These service awards and any requirements for obtaining any such payments are separate and apart from, and in addition to, the Service Award Recipients' recovery from the Net Settlement Fund as Eligible AMs.  The substance of the Named Plaintiff's application for service awards is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the Settlement and this Agreement.  The outcome of the Court's ruling on the application for service awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  Any service award money not approved by the Court shall become part of the Net Settlement Fund.

**3.4     Distribution of Payments to Participating AMs.**

i.     Payments to Participating AMs will be made from the Net Settlement Fund.  To be a Participating AM and receive a Settlement Check, each Eligible AM must fill out and timely submit a Claim Form, as outlined in Section 2.10.  The estimated Settlement Amount for each Eligible AM will be determined by the Settlement Administrator pursuant to the following formula:

(a)     Each Eligible AM, including the Named Plaintiff and Opt-in Plaintiff, shall be assigned one point for each full week in which the individual was employed as an AM during the Relevant Period.

(b)     To calculate each Eligible AM's proportionate Settlement Amount:

1.     Add all points for all Eligible AMs together to obtain the "Denominator";

2.     Divide the number of points for each Eligible AM by the Denominator to obtain each Eligible AMs' "Portion of the Net Settlement Fund";

3.     Multiply each Eligible AM's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible AM's Settlement Amount.

ii.     The Settlement Administrator's calculations regarding Eligible AMs' Settlement Amounts from the Net Settlement Fund will be final and binding.

iii.    The Settlement Administrator shall use reasonable efforts to make an additional mailing to Participating AMs whose checks are returned because of incorrect addresses.  Such efforts shall include: (a) obtaining correct addresses as described in Section 2.8; (b) using social security numbers to obtain better address information; and/or (c) attempting to reach Participating AMs by phone and/or e-mail.

iv.     Participating AMs shall have one hundred twenty (120) days following the issuance of Settlement Checks to negotiate their Settlement Amounts.  Any Settlement Checks not cashed within that period shall become void and the Settlement Administrator shall issue a "stop payment" thereon.  Any such voided checks shall become a part of the reversion to Defendants.  The Settlement Administrator shall issue a reminder postcard via e-mail and First Class United States Mail sixty (60) days after issuance of Settlement Checks to those Participating AMs who, at the time of mailing the reminder postcard, have yet to negotiate their Settlement Checks, reminding them of the deadline to negotiate their Settlement Checks.

v.     Defendants' Payroll Tax Responsibility and Tax Characterization of Payments.

(a)     For tax purposes, 50% of the payment to a Participating AM pursuant to this Agreement shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

(b)     Defendants' share of payroll taxes (*i.e.*, Employer Payroll Taxes) shall be paid separately and in addition to the Gross Settlement Amount.

(c)     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2.  Payments treated as service awards, interest and/or liquidated damages shall be made without withholding and shall be reported to the IRS and the payee, and the Settlement Administrator shall determine the proper tax reporting form for that amount.  The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and service awards and issuing IRS Forms W-2 and Forms 1099.  The Settlement Administrator also shall be responsible for calculating and notifying Defendants regarding the amount of the Employer Payroll Taxes associated with each Participating AMs Settlement Amount and Settlement Check.  Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each of Plaintiffs' Counsel payees under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(d)     The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating AM receiving a Settlement Check or service award.  The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Participating AMs, the payment of any costs or award of attorneys' fees, or any payments to the Service Award Recipients.  The Settlement Notice will advise Eligible AMs to seek their own tax advice prior to acting in response to that Settlement Notice.  Neither Plaintiffs' Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

## 4. RELEASE OF CLAIMS

**4.1**  Release by Participating AMs:  Conditioned upon the Court's entry of the Approval Order, and in exchange for monetary consideration received pursuant to this Agreement, all Participating AMs shall release Releasees from:  all overtime claims that accrued during their employment as AMs from October 19, 2015, and continuing through the date of approval, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, arising out of the allegations in this Litigation.  The claims being released are referred to in this Agreement as "Released Claims."

**4.2**  Any Eligible AM who does not timely execute and return a Claim Form will not be bound by any release of claims.

**4.3**  Release by Service Award Recipients: All Service Award Recipients, including without limitation Named Plaintiff and Opt-in Plaintiff, who receive and accept a service award will additionally waive, release and discharge Releasees from all demands, claims and actions, whether known or unknown, relating to their employment or termination of employment with Defendant, including but not limited to claims under the Americans With Disabilities Act, National Labor Relations Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation), Equal Pay Act, Employee Retirement Income Security Act of 1974, Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date the respective Service Award Recipient signs this Agreement; provided, however, that Service Award Recipients do not waive the right to file a charge or complaint with any administrative agency but they do waive any right to recover any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on their own behalf or by any third party, including as a member of any collective action.  Service Award Recipients do not release any claim that cannot be released as a matter of law or rights under this Agreement.

**4.4**  By signing the Agreement, Service Award Recipients become parties to the Agreement.

## 5. PARTIES' AUTHORITY

**5.1**  The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 6. MUTUAL COOPERATION

**6.1**  The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other

efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

**7.** **NOTICES**

**7.1** Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and/or Settlement Collective:

>Justin M. Swartz
>Melissa L. Stewart
>Outten & Golden LLP
>685 Third Avenue, 25th Floor
>New York, NY 10017
>(212) 245-1000
>(646) 509-2057 (facsimile)
>jms@outtengolden.com
>mstewart@outtengolden.com

>Gregg I. Shavitz
>Shavitz Law Group, P.A.
>1515 South Federal Hwy.
>Suite 404
>Boca Raton, FL 33432
>(561) 447-8888
>(561) 447-8831 (facsimile)
>gshavitz@shavitzlaw.com

>Drew Legando
>Landskroner Grieco Merriman LLC
>1360 West Ninth Street, Suite 200
>Cleveland, Ohio 44107
>(216) 522-9000
>drew@lgmlegal.com

To Defendant:

>S. McKinley Gray, Esq.
>Thomas S. Babel, Esq.
>Ward and Smith, P.A.
>Post Office Box 7068

Wilmington, NC 28406-7068
(910) 794-4800
tsb@wardandsmith.com
smg@wardandsmith.com

## 8. NO ADMISSION OF LIABILITY

**8.1**    Defendants deny all of the allegations made by Named Plaintiff in the Litigation and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nothing herein will be deemed or used as an admission that a collective should be certified for any purposes other than for settlement. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 9. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**9.1**    Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**9.2**    No Assignment. Named Plaintiff and Opt-in Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

**9.3**    Entire Agreement. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein.

**9.4**    Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendants, their affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Plaintiffs, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**9.5**    Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**9.6**    Captions. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**9.7**    Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**9.8** Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Ohio, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**9.9** Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**9.10** Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement

**9.11** Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**9.12** Facsimile, Electronic, and E-mail Signatures. Any party may execute this Agreement by signing, including by electronic means, or by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or e-mail to counsel for the other party. Any signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**9.13** Signatories. This Agreement is valid and binding if signed by Defendants' authorized representative and the Named Plaintiff.

**WE AGREE TO THESE TERMS.**

DATED: 3/16/18

PLATINUM CORRAL LLC

By: _Billy Sweep_____

_Pres/CBO, Mgr_____

DATED: 3/16/18

PLATINUM CORRAL MANAGEMENT, LLC

By: _Billy Sweep_____

_Pres/CBO, Mgr_____

DATED: _____

SCOTT JOHNSON

_____

DATED: _____

ROBERT COOPER

_____

Page 17 of 17

DATED: _____         **PLATINUM CORRAL LLC**

By: _____

_____

DATED: _____         **PLATINUM CORRAL MANAGEMENT, LLC**

**By:** _____

_____

DATED:  3/15/2018
_____         **SCOTT JOHNSON**

_____

DATED: _____         **ROBERT COOPER**

_____

DATED: _____     **PLATINUM CORRAL LLC**

By: _____

_____


DATED: _____     **PLATINUM CORRAL MANAGEMENT, LLC**

**By:** _____

_____


DATED: _____     **SCOTT JOHNSON**

_____


DATED: 3/16/2018 _____     **ROBERT COOPER**

DocuSigned by:

9B2F2F7179EF431...  _____

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SCOTT JOHNSON, on behalf of himself and all others similarly situated, | |
| Plaintiff, | 17 Civ. 399 (GCS) (EPD) |
| v. | Hon. George C. Smith |
| PLATINUM CORRAL LLC and PLATINUM CORRAL MANAGEMENT, LLC, | |
| Defendants. | |

## CONSENT TO JOIN SETTLEMENT, RELEASE, AND CLAIM FORM

**The form must be returned to the Settlement Claims Administrator so that it is postmarked or received by facsimile or email by [60 DAYS FROM DATE OF MAILING].**

I hereby consent and opt-in to become a plaintiff for settlement purposes in a lawsuit brought under the Fair Labor Standards Act ("FLSA"), *Johnson v. Platinum Corral LLC and Platinum Corral Management, LLC*, No. 17 Civ. 0399. I consent and agree to be bound by any adjudication of this action by the Court. I further agree to be bound by the collective action settlement approved by the Court. I hereby designate the law firms of Outten & Golden LLP; Shavitz Law Group, P.A.; and Landskroner Grieco Merriman LLC to represent me in this action. I understand that if I return this Claim Form, I will fully release Platinum Corral LLC and Platinum Corral Management, LLC ("Platinum Corral") and its parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns (the "Releasees") from any and all overtime claims relating to classification as an exempt manager that accrued during my employment as an Associate Manager, Assistant Manager, Service Manager, or Kitchen Manager, however variously titled (collectively, "AMs"), relating back to October 19, 2015 and continuing through January 30, 2018, including, all state and federal claims for unpaid overtime wages and related claims for penalties, interest, liquidated damages, attorneys' fees and costs, and expenses.

_____   _____   _____

Name (print)                                   Signature                                          Date

_____

Street Address

_____

City, State and Zip Code

_____                          _____

Telephone Number                                                        Email Address

**OFFICIAL COURT NOTICE OF SETTLEMENT AND OPPORTUNITY TO JOIN**

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

---

**If you were an Associate Manager, Assistant Manager, Service Manager, or Kitchen Manager employed by Platinum Corral, you may be entitled to a payment from a collective lawsuit settlement.**

*A court authorized this notice.  This is not a solicitation from a lawyer.*

- This notice pertains to any individual employed by Platinum Corral LLC and Platinum Corral Management LLC ("Platinum Corral") as an Associate Manager, Assistant Manager, Service Manager, or Kitchen Manager, however variously titled (collectively, "Associate Managers" or "AMs") between October 19, 2015, and January 30, 2018 (the time period covered by the lawsuit).

- Former AMs have sued Platinum Corral, alleging that Platinum Corral misclassified AMs as exempt from overtime under federal laws and failed to pay them overtime compensation for all hours worked in excess of 40 per workweek.  Platinum Corral denies these allegations and the Court has not made any ruling on the merits of Plaintiff's claims.  The parties have entered into a settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

- You are receiving this Notice because Platinum Corral's records indicate you were employed as an AM during the period covered by the lawsuit, and therefore you are eligible to participate in the settlement.

- Based on the formula discussed below, the total individual settlement amount you may be entitled to receive is estimated to be approximately **$[AMOUNT]**, subject to deductions for applicable taxes.

- As described more fully below, to participate in the settlement, you must mail a properly completed Consent to Join Settlement, Release, and Claim Form ("Claim Form") to the Settlement Claims Administrator so that it is post-marked or received by **[60 DAYS FROM DATE OF MAILING]**.  If you fail to timely return a Claim Form post-marked or otherwise received by **[60 DAYS FROM DATE OF MAILING]**, you will not receive any money from the settlement.

**Your legal rights may be affected, and you have a choice to make:**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CLAIM FORM** | By returning a properly completed Claim Form, you agree to participate in the settlement, receive a monetary settlement payment, and release your claims. |
| **DO NOT RETURN THE CLAIM FORM** | If you do not wish to participate in or be bound by the settlement, you should not return the Claim Form.  If you do not timely return a properly completed Claim Form postmarked or otherwise received by [**60 days from the mailing of Notice**], you will not receive a monetary settlement payment and will not release your claims. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

## BASIC INFORMATION

**1.      WHY DID I GET THIS NOTICE?**

Platinum Corral's records state that you worked as an AM between October 19, 2015, and January 30, 2018 (the period covered by the lawsuit).

The Court ordered that you be sent this notice because you have a right to know about the settlement of a collective action lawsuit in which you are eligible to participate.  This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Honorable George C. Smith, United States District Judge in the Southern District of Ohio, is overseeing the lawsuit. The lawsuit is known as *Johnson v. PCL Management LLC and Platinum Coral LLC*, Case No. 17 Civ. 399. The person who filed the lawsuit is called the "Plaintiff."  Platinum Corral is called the "Defendant."

**2.      WHAT IS THIS LAWSUIT ABOUT AND WHY IS THERE A SETTLEMENT?**

The lawsuit is about whether Platinum Corral improperly classified AMs as exempt employees who are not entitled to receive overtime under federal wage and hour laws and failed to pay them overtime premium pay for the time they worked in excess of 40 hours a week.

Defendant denies that it did anything wrong and believes that AMs are properly compensated as employees who are exempt from overtime.  However, to avoid the burden, expense, and uncertainty of continuing litigation, the parties have agreed to this settlement.  The Court has not made any ruling on the merits of the Plaintiff's claims, and no party has prevailed in this action.

3.      **WHAT IS A COLLECTIVE ACTION?**

In a "collective action," one or more people called "Named Plaintiffs" sue on behalf of people who have similar claims.  However, the other employees who have similar claims do not become part of the collective action until they "opt in" to the lawsuit.  You may "opt in" to the lawsuit and participate in the settlement by returning the enclosed Claim Form. If you timely return the enclosed Claim Form, you will receive a settlement check.

4.      **WHAT ARE THE TERMS OF THE SETTLEMENT AGREEMENT?**

Platinum Corral has agreed to pay $220,000.00 into a fund to settle the lawsuit and compensate AMs who are covered by the settlement.  The Court has approved the following payments from the fund: (i) attorneys' fees and costs, in the amount of one-third of the settlement fund, and reasonable out-of-pocket costs; (ii) service awards to the Named Plaintiff and Opt-In Plaintiff, in the aggregate amount of $7,500, in recognition of the risks they took and their service to the collective; and (iii) Settlement Claims Administrator's fees and costs, not to exceed $[**AMOUNT**].

5.      **HOW MUCH WILL MY PAYMENT BE AND HOW WAS IT CALCULATED?**

Based on the formula that has been approved by the Court, you will receive approximately $[**AMOUNT**].

Half of this payment is subject to deductions for applicable taxes and withholdings like any other paycheck, for which you will receive a W-2, and half of the payment will be reported on a 1099.

The allocation formula takes into account the number of weeks you worked as an AM during the period covered by the settlement.  The Settlement Agreement contains the exact allocation formula.  You may obtain a copy of the Settlement Agreement by contacting the Settlement Claims Administrator at the address listed below.

*Plaintiff's Counsel and Defendants' Counsel do not make any representations concerning the tax consequences of this settlement or participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this notice.*

6.      **HOW DO I MAKE A CLAIM?**

In order to join in the lawsuit and receive a payment under the settlement, you must complete, sign and mail the enclosed Claim Form to the Settlement Claims Administrator at the address listed below.  **Your Claim Form must be postmarked or received by no later than [60 DAYS AFTER THE DATE NOTICE WAS SENT].**

The **Settlement Claims Administrator** – to whom all Claim Forms and questions should be directed – is:

**Platinum Corral Associate Manager Settlement**
**<ADDRESS>**
**<PHONE>**
**<E-MAIL>**

The Settlement Claims Administrator will issue settlement checks to all AMs who return timely Claim Forms. You will have 120 calendar days after the date your settlement check is issued to negotiate and cash your settlement check.

**7.     WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?**

If you return a properly completed Claim Form, you will become part of the collective action settlement.  Once you become part of the settlement, you cannot sue, continue to sue, or be a party in any other lawsuit against Platinum Corral and other Releasees about any Released claims, as explained below.  It also means that all of the Court's orders will apply to you and legally bind you.

The "Releasees" are Platinum Corral and its parents, subsidiaries, affiliates, predecessors, successors, members, shareholders, officers, directors, agents, employees, and assigns.

The "Released claims" are all overtime claims that accrued during your employment as an AM, from October 19, 2015, and continuing through **[DATE OF APPROVAL]**, including, without limitations, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees and costs, and expenses, arising out of the allegations in this litigation.

If you do not want to participate in, or be bound by, the settlement, you should not return the Claim Form.

**8.     DO I HAVE A LAWYER IN THIS CASE?**

The law firms of Outten & Golden LLP, Shavitz Law Group, P.A., and Landskroner Grieco Merriman LLC, have been designated as legal counsel to represent you and other AMs who participate in the settlement.  You will not be charged separately for these lawyers.  Their fees will be paid from the total settlement fund (as explained in Section 4 above).

**9.     HOW CAN I GET MORE INFORMATION?**

If you have additional questions about this Notice or want more information, you can contact the Settlement Claims Administrator, or Plaintiff's Counsel at the addresses and/or telephone numbers below.

Melissa L. Stewart
Nina T. Martinez
Michael C. Danna
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor⌧
New York, NY 10017

(212) 245-1000
PlatinumCorralOvertimeSettlement@outtengolden.com

Gregg Shavitz
Alan Quiles
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Hwy., Suite 404
Boca Raton, FL 33432
(561) 447-8888
info@shavitzlaw.com

Dated: **[INSERT DATE]**